**STATE BAR OF TEXAS, Appellant,**

v.

**Marcus E. FAUBION, Appellee.**

**No. C14–91–0027–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 15, 1991.

Rehearing Denied Oct. 24, 1991.

Linda A. Acevedo, Austin, for appellant.

Edwin Lamm, III, Michael P. Fleming, Houston, for appellee.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

The State Bar of Texas appeals from a judgment finding that Marcus E. Faubion, appellee, did not violate the Texas Code of Professional Responsibility. The State Bar contends that appellee falsely represented that he was certified by the Texas Board of Legal Specialization and that he split fees with a non-lawyer. The case was submitted to the court on an agreed statement of facts pursuant to TEX.R.CIV.P. 263. The trial court found no professional misconduct on the part of appellee. Appellant brings two points of error, complaining of the same conduct. We affirm in part and reverse and remand in part.

A case submitted to the court upon an agreed stipulation of facts under Rule 263 is in the nature of a special verdict and "is a request by the litigants for judgment in accordance with the applicable law." *Brophy v. Brophy*, 599 S.W.2d 345, 347 (Tex.Civ.App.—Texarkana 1980, no writ). The court's judgment must declare only the law necessarily arising from the stipulated facts. *Gibson v. Drew Mortgage Co.*, 696 S.W.2d 211, 213 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). The trial court and the reviewing court may not, unless provided otherwise in the agreed statement, find any facts not conforming to the agreed statement. *Henry S. Miller Co. v. Wood*, 584 S.W.2d 302, 303–04 (Tex.Civ.App.—Texarkana 1979), *aff'd*, 597 S.W.2d 332 (Tex.1980). The question on appeal is limited to the issue of the correctness of the trial court's application of the law to the admitted facts. *Gibson*, 696 S.W.2d at 213; *Brophy*, 599 S.W.2d at 347. We find that the trial court incorrectly applied the law to the agreed facts.

As originally pled, the trial court was required to make separate findings on each alleged violation of the Disciplinary Rules. The State Bar has condensed appellee's alleged violations of multiple Rules into its first point of error relating to his use of the letterhead. For the sake of clarity, we will discuss each Disciplinary Rule in turn. Appellant argues that the trial court erred in finding that appellee committed no professional misconduct in holding himself out to be board certified in civil trial law when, in fact, he was not. The stipulated facts indicate that appellee was issued a certificate of special competence by the Texas Board of Legal Specialization in civil trial law on December 31, 1981. Appellee's certification expired December 31, 1986 because of a deficiency in continuing legal education hours. Despite his loss of certification, appellee continued to use stationary bearing the designation, "Marcus E. Faubion Board Certified Civil Trial Specialist," in the ordinary course of his business until January 6, 1988. When the stationary was depleted, he ordered more without the designation. No complaint was made by any client or potential client regarding appellee's use of the letterhead, nor did any member of the public suffer any known damage resulting from the use of the letterhead.

Appellee's alleged ethical violations occurred prior to the adoptions of the new disciplinary rules; therefore, we will review his actions based on the Code of Professional Responsibility which provides:

A lawyer shall not:

(1) Violate a Disciplinary Rule.

&ast; &ast; &ast; &ast; &ast; &ast;

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

SUPREME COURT OF TEXAS, CODE OF PROFESSIONAL RESPONSIBILITY, DR 1–102(A) (1984).[1] The prohibition in the Code limiting publicity and advertising by attorneys provides:

---

1. *Repealed by,* SUPREME COURT OF TEXAS, STATE BAR RULES art. X, § 9 (Texas Disciplinary Rules of Professional Conduct) Rule 8.04(a) (1989) [hereinafter TEX. DISCIPLINARY RULES OF PROF. CONDUCT]

(located in the pocket part for Volume 3 of the Texas Government Code in title 2, subtitle G app., following § 83.006 of the Government Code).

A lawyer shall not make, on behalf of himself, his partner, associate, or any other lawyer, any false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it:

(1) Contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading....

*Id.* DR 2–101(A) (1984).[2] The State Bar argues that appellee's use of a letterhead stating he was certified in civil trial law was a material misrepresentation of fact in violation of the rule. The State Bar also argues that the use of the letterhead violates the prohibition against claims of expertise because appellee held himself out publicly as a specialist. *Id.* DR 2–104 (1984).[3]

Appellee argues that the letterhead did not amount to a material misrepresentation because there were no persons harmed through reliance on the statement. Appellee argues that detrimental reliance, analogous to common law fraud, is required before a violation of DR 2–101(A) can be found. *See, e.g., Roberd v. First Federal Savings & Loan,* 490 S.W.2d 243 (Tex.Civ. App.—Austin 1973, writ ref'd n.r.e.). We disagree.

■ A lawyer's letterhead is considered a communication subject to the dictates of DR 2–101. Tex.Comm. on Professional Ethics, Op. 406, 46 TEX. B.J. 1292 (1983). The prohibitions found in DR 2–101 are clear and unambiguous. Appellee's letterhead stated that he was board certified in civil trial law when, in fact, he was not. Therefore, a false communication was made by appellee. This false claim of expertise also violates DR 2–104, because appellee held himself out to the public as a specialist when his certification had expired.

■ We also find that the statement was a material misrepresentation. The Ethical Considerations attached to the Code provide:

Changed conditions, however, have seriously restricted the effectiveness of the traditional selection process. Often the reputations of lawyers are not sufficiently known to enable laymen to make intelligent choices. The law has become increasingly complex and specialized. Few lawyers are willing and competent to deal with every kind of legal matter, and many laymen have difficulty in determining the competence of lawyers to render different types of legal services.

STATE BAR OF TEXAS, ETHICAL CONSIDERATIONS ON CODE OF PROFESSIONAL RESPONSIBILITY, EC 2–7 (1984). Therefore, to avoid the possibility of misleading the public, "a lawyer should be scrupulous in the representation of his professional status." *Id.* EC 2–13. To the layman, appellee's letterhead indicated that he possessed a level of professional expertise greater than most lawyers, a status not readily verifiable by the average client. We hold that a lawyer has committed a material misrepresentation if a letterhead is used advertising board certification when his certification has expired.

■ Appellee argues that there can be no violation of DR 2–101 absent some reliance and injury by a third party. We are not persuaded that, to constitute material misrepresentation under the rule, detrimental reliance is required on the part of an aggrieved member of the public. Nothing in the rule or the ethical considerations appended to the Code indicates that conduct on the order of fraud is necessary before a misrepresentation can be found to be material. There are no Texas cases directly addressing this issue. However, the Washington Supreme Court discussed the use of misleading letterheads in the case of *In re Schroeter,* 80 Wash.2d 1, 489 P.2d 917 (1971). There, the court held that the use of stationery indicating multi-state connections by Schroeter's law firm that also failed to indicate that Schroeter was not authorized to practice in other jurisdictions violated the Washington Canons of Professional Ethics despite the fact that there was "no evidence anyone was victim-

---

**2.** *Repealed by,* TEX. DISCIPLINARY RULES OF PROF. CONDUCT Rule 7.01(a) (1989).

**3.** *Repealed by,* TEX. DISCIPLINARY RULES OF PROF. CONDUCT Rule 7.01(b) (1989).

ized by [the] practices." 80 Wash.2d at 3, 489 P.2d at 919. Likewise, we hold that detrimental reliance is not required to prove a violation of DR 2–101(A)(1).[4]

We find that appellee committed misconduct, as defined under DR 1–102(A)(1), because appellee violated DR 2–101(A)(1) and DR 2–104. We also find that appellee engaged in deceptive conduct, by misrepresenting his professional status, as proscribed in DR 1–102(A)(4). We find no allegation in the agreed facts egregious enough to amount to conduct that is prejudicial to the administration of justice. *See* SUPREME COURT OF TEXAS, CODE OF PROFESSIONAL RESPONSIBILITY, DR 1–102(A)(5) (1984). Nor do we find any conduct on appellee's part that adversely reflects on his fitness to practice law. *See id.* DR 1–102(A)(6). Consequently, we hold that the trial court was partially correct in applying the law to the agreed facts in finding no misconduct under DR 1–102(A)(5) and DR 1–102(A)(6). However, we hold that the trial court incorrectly applied the law to the agreed facts relating to DR 1–102(A)(1), DR 2–101(A)(1), DR 2–104, and DR 1–102(A)(4). Therefore, we must sustain appellant's first point of error in part.

In its second point of error, the State Bar argues that appellee engaged in illegal fee-splitting with one of his employees. The stipulated facts indicate that appellee employed Michael C. Price as a paralegal/investigator. Price was paid a salary, car allowance, and incentive bonus. Attorney's fees recovered in cases worked on by Price were deposited into appellee's firm operating account and "on regular paydays Price's compensation was computed at 20% to 33⅓ of the gross fees calculated upon Price's time involvement in a particular case." Appellant argues that this method of payment constituted a violation of the disciplinary rules. Appellee argues that Price's compensation was based only on time involvement and, therefore, was similar to an hourly sum paid to a paralegal. We disagree.

■ The Code of Professional Responsibility forbids an attorney from sharing legal fees with a nonlawyer except for payments to the estate of a deceased lawyer or payments to a retirement plan. SUPREME COURT OF TEXAS, CODE OF PROFESSIONAL RESPONSIBILITY, DR 3–102 (1984).[5] The ethical considerations appended to the Code provide little guidance on the fee-splitting. The new provision, Rule 5.04,[6] is very similar to DR 3–102, therefore, the comments to the newly enacted Rules of Professional Conduct are instructive regarding the restrictions involved in the rule. The principle purpose of the prohibition against sharing legal fees is to prevent solicitation of clients by lay persons and to avoid encouraging or assisting nonlawyers in the practice of law. TEX. DISCIPLINARY RULES OF PROF. CONDUCT Rule 5.04 Comment 1 (1989). The exceptions involve situations where the sharing of fees is unlikely to encourage solicitation or the unauthorized practice of law. *Id.* Comment 2. The Rule merely forbids sharing of legal fees with nonlawyers; it does not mandate that employees be paid a fixed salary. *Id.* Comment 3.

Thus, the payment of an annual or other bonus does not constitute the sharing of

---

4. If the State Bar had limited its allegations to a violation of DR 1–102(A)(5) which provides that a lawyer shall not engage in conduct involving fraud or deceit, we would agree that the elements of common law fraud need to be proven. However, the stipulated facts also show conduct involving misrepresentation through false communications.

5. *Repealed by,* TEX. DISCIPLINARY RULES OF PROF. CONDUCT Rule 5.04 (1989).

6. Rule 5.04 provides, in part, that a lawyer cannot share legal fees except that:

   [A]n agreement by a lawyer with the lawyer's firm, partner, or associate, or a lawful court order, may provide for the payment of money, over a reasonable period of time, to the lawyer's estate to or for the benefit of the lawyer's heirs or personal representatives, beneficiaries, or former spouse, after the lawyer's death or *as otherwise provided by law* or court order.

   TEX. DISCIPLINARY RULES OF PROF. CONDUCT Rule 5.04(a)(1) (1989) (emphasis added). Appellee seems to imply that the italicized portion of the Rule somehow allows fee-splitting based on other provisions such as the comments to the Rule. We disagree. Subparagraph (a)(1) *is confined to situations authorizing remuneration to a deceased attorney's estate and should not be read any broader.*

legal fees *if the bonus is neither based on a percentage of the law firm's profits or on a percentage of particular legal fees* nor is given as a reward for conduct forbidden to lawyers.

*Id.* (emphasis added).

■ There are no Texas cases reported on the issue of fee splitting. However, the South Carolina Supreme Court addressed the issue of an attorney who paid investigators bonuses of six to eight percent of the legal fees generated in particular cases in which the investigators worked. *In re Anonymous Member of the South Carolina Bar,* 295 S.C. 25, 367 S.E.2d 17 (S.C. 1988) (per curiam). The provision at issue in the South Carolina Code of Professional Responsibility was identical to Texas DR 3–102. The court held that the attorney's conduct was a clear violation of the Rule because the bonuses received by the investigators "were directly related to a percentage of the fees generated in the individual cases they investigated." *Id.* 367 S.E.2d at 18. Similarly, The California Supreme Court approved disciplinary proceedings against an attorney who compensated his paralegal twenty percent of the legal fees in which the paralegal participated. *See Gassman v. State Bar,* 18 Cal.3d 125, 553 P.2d 1147, 132 Cal.Rptr. 675 (Cal.1976).

Here, appellee shared legal fees with Price based upon Price's involvement in a particular case. We find appellee's argument that Price's payment schedule was based solely on time spent on a particular case to be disingenuous. Price's payments were not analogous to an hourly wage; they were based on a "percentage of particular legal fees." Such a practice is not sanctioned by the Texas ethics rules. We find that appellee violated DR 3–102 and we sustain appellant's second point of error.

Accordingly, we affirm in part and reverse and remand in part for disciplinary proceedings consistent with this opinion.