Greene v. Empire Fire 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-037-CV





ORAN GREENE,



 APPELLANT


vs.





EMPIRE FIRE AND MARINE INSURANCE COMPANY AND 


NGC COUNTY MUTUAL INSURANCE COMPANY,



 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT



NO. 493,705, HONORABLE PAUL R. DAVIS, JR., PRESIDING JUDGE 



 





 This is a suit on an insurance policy. Oran Greene, appellant, sued NGC County
Mutual Insurance Company ("NGC") and Empire Fire and Marine Insurance Company
("Empire"), to enforce a judgment rendered against Michael Chinn, an erstwhile insured of NGC. 
Empire was NGC's authorized agent to adjust claims made against Chinn's policy. The cause
arose from injuries Greene sustained in an accident while Chinn was driving. The insurance
companies denied liability on the ground that, at the time of the accident, Chinn's policy was no
longer in effect. The parties submitted the case to the district court on an agreed record, pursuant
to Rule 263 of the Texas Rules of Civil Procedure. The district court rendered judgment that
Greene recover nothing from the insurance companies. We will affirm that judgment.



 BACKGROUND


 The facts of this case are stipulated. NGC issued an automobile insurance policy
to Chinn, the policy period to run from December 30, 1989, through December 30, 1990. On
or about March 20, 1990, NGC canceled the policy for non-payment of premiums. On April 9,
1990, Chinn and his passenger, Greene, were involved in the accident that forms the basis of this
suit. Chinn filed a claim with Empire, which assigned the claim to a local adjuster, Littleton
Claims ("Littleton"). Empire authorized Littleton to settle property damage and bodily injury
claims. An agent of Littleton, Holly Whatley, contacted the involved parties and extended a
settlement offer to at least one of the injured parties. In the course of attempting to settle the
claim and responding to requests for insurance coverage information, Empire discovered that
NGC had canceled Chinn's policy. On July 19, 1990, Empire denied coverage to Chinn due to
the cancellation of his policy with NGC.

 In Greene's subsequent suit against Chinn, both NGC and Empire refused to defend
because Chinn had forfeited coverage by non-payment of premiums. Chinn suffered a default
judgment for $21,000. Greene sought to enforce this judgment against NGC and Empire on the
theory that the insurance companies had waived the cancellation of Chinn's policy or were
estopped to deny coverage. The district court, on the basis of the agreed record, denied Greene
any recovery against NGC and Empire. On appeal, Greene brings two points of error challenging
the legal and factual sufficiency of the evidence to support the judgment, first contending that the
record shows a waiver of forfeiture as a matter of law, and next urging that the judgment is
against the great weight and preponderance of the evidence.



DISCUSSION


 A case submitted to the trial court on an agreed stipulation of facts under Rule 263
is in the nature of a special verdict and is a request by the litigants for judgment in accordance
with the applicable law. State Bar of Tex. v. Faubion, 821 S.W.2d 203, 205 (Tex. App.--Houston
[14th Dist.] 1991, writ denied). The court's judgment must declare only the law necessarily
arising from the stipulated facts. Gibson v. Drew Mortgage Co., 696 S.W.2d 211, 213 (Tex.
App.--Houston [14th Dist.] 1985, writ ref'd n.r.e.). The trial court may not, unless provided
otherwise in the agreed statement, find any facts not conforming to the agreed statement. Henry
S. Miller Co. v. Wood, 584 S.W.2d 302, 303-04 (Tex. Civ. App.--Texarkana 1979), aff'd, 597
S.W.2d 332 (Tex. 1980). The question on appeal is limited to whether the trial court correctly
applied the law to the admitted facts. Faubion, 821 S.W.2d at 205.

 Greene contends that the trial court erred in rendering judgment against him
because, by their actions in investigating the accident and authorizing the settlement of claims,
appellees have waived the cancellation of Chinn's policy.

 Texas courts address renewal, or reinstatement, of a lapsed policy in terms of
"waiver of forfeiture." Preferred Risk Mut. Ins. Co. v. Rabun, 561 S.W.2d 239, 242 (Tex. Civ.
App.--Austin 1978, writ dism'd w.o.j.). A claim of waiver of forfeiture relating to a lapsed policy
typically arises in the context of the insured's attempts to renew coverage by late-payment of
premiums. The paradigmatic case involves (1) a policy lapsed through non-payment of premiums,
(2) an effort by the insured to pay the premium and reinstate the policy, (3) acceptance of the late
payment by the insurance company, (4) a loss concurrent with or soon after the late payment, and
(5) denial of coverage by the insurer. See, e.g., Bailey v. Sovereign Camp, W.O.W., 286 S.W.
456 (Tex. 1926); Equitable Life Assurance Soc'y v. Ellis, 152 S.W. 625 (Tex. 1913); Sovereign
Camp W.O.W. v. Cameron, 41 S.W.2d 283 (Tex. Civ. App.--Austin 1931, writ ref'd); Preferred
Risk Mut. Ins. Co. v. Rabun, 561 S.W.2d 239.

 The Texas Supreme Court gracefully articulated the principle underlying the theory
of waiver of forfeiture in the lapsed policy context in Bailey v. Sovereign Camp:



The time has not come in this state when an insurance company . . . can, with
knowledge that a policy holder has forfeited his right of protection, voluntarily
accept and retain the premium which the insured has paid, as was done in this
instance, without also keeping in full force and effect the liability of said insurance
company under said policy. Particularly is this true where the premium is retained
with the knowledge of facts constituting a forfeiture and returned only after the
death of the insured. One who places his bets after the dice are thrown is sure to
win. It is too evident for words that, had Bailey [the insured] lived, no forfeiture
would have been claimed or sought. But Bailey died, and the premiums were
returned. Insurance companies cannot so gamble on the lives of their policy-holders. Having accepted the wager in accepting the premium, the [insurer] was
bound by the consequences.



Bailey, 286 S.W. at 458.

 This principle, intended to prevent insurers from retaining premiums only as
convenient, is doubtless as vital today as it was in 1926, but we do not believe it applies to this
case. There is no record evidence showing that Chinn made any effort at all to reinstate his
coverage by paying his premiums. Thus, it cannot be said that the appellees were in any way
gambling with the well-being of their former policy holder. We decline to hold that the appellees
revived Chinn's lapsed policy, where he made no effort to reinstate it, simply because they began
to investigate a claim as though the policy were still in force. Such a holding would do nothing
to advance the protection of insureds from "bet-hedging" insurers, but would punish the insurer
for promptly processing claims.

 To support his claim of waiver, Greene relies heavily on Equitable Life Assurance
Society v. Ellis, 147 S.W. 1152 (Tex. 1912), aff'd on rehearing, 152 S.W. 625 (Tex. 1913). The
supreme court there explained,



[A] waiver of the forfeiture of the policy will result, in absence of any agreements
to that effect, from negotiations or transactions with the insured, after knowledge
of the forfeiture, by which the insurer recognizes the continued validity of the
policy or does acts based thereon.



Id. at 1156 (emphasis added). Ellis, by failing to pay annual premiums timely, had forfeited two
life insurance policies. Rather than lose Ellis's business, however, the insurer offered to lend
Ellis the money needed to pay the premiums, taking as security the underlying policies. Id. at
1155. The supreme court determined that, despite its awareness of the forfeiture, the insurer had,
through its loan negotiations with Ellis, evinced its clear intent to treat the lapsed policies as valid. 
Id. at 1158. The insurer was therefore held to have waived its defense of non-coverage.

 Unlike Ellis's insurer, Empire acted without knowledge that Chinn's policy had
lapsed. The stipulated facts in the instant case reveal that Empire discovered the cancellation
while investigating Chinn's claim and that Empire's prompt response to Chinn's claim ended when
it learned that the policy had lapsed. NGC and Empire thereafter refused to defend Chinn from
Greene's suit. We cannot conclude from this evidence that either Empire or NGC manifested any
express or implied intention, as did the insurer in Ellis, to waive the defense of non-coverage. 
Neither the facts nor the policy undergirding Ellis controls the instant case.

 We overrule Greene's points of error because (1) the evidence does not show that
the insurance companies waived Chinn's forfeiture as a matter of law and (2) the judgment is not
against the great weight and preponderance of the evidence.

 Although Greene does not bring a point of error specifically raising the matter of
estoppel, we will briefly discuss estoppel due to its potential applicability to the facts of this case. 
We pause to note that waiver and estoppel, though related and oft-confused concepts, are separate
and distinct. The supreme court has explained the difference between the two: "Waiver
presupposes full knowledge of existing right, while estoppel arises where by fault of one, another
has been induced to change his position for the worse." Massachusetts Bonding & Ins. Co. v.
Orkin Exterminating Co., 416 S.W.2d 396, 401 (Tex. 1967) (citing New Amsterdam Casualty Co.
v. Hamblen, 190 S.W.2d 56 (Tex. 1945)).

 Though Empire's conduct in investigating and authorizing settlement of injury
claims does not constitute a waiver on the facts of this case, we note that similar conduct could
give rise to an estoppel against the insurer, where an insurer induces detrimental reliance by a
third party. Here, however, Greene has not shown estoppel. Any party seeking to establish an
estoppel must prove (1) a false representation or concealment of material facts, (2) made with
knowledge, actual or constructive, of those facts, (3) with the intention that it should be acted on,
(4) to a party without knowledge or the means of knowledge of those facts, (5) who detrimentally
relied upon the misrepresentation. Schroeder v. Texas Iron Works, Inc., 813 S.W.2d 483, 489
(Tex. 1991).

 Assuming, without deciding, that Greene proved all the other elements, we are
unable to find an estoppel since there is no proof of detrimental reliance. Because all of Greene's
physical injuries occurred before any misrepresentations by Whatley, the only way that Greene
could possibly have relied to his detriment would have been if he had incurred greater medical
expenses based on Whatley's assurances of coverage than he would have incurred had Whatley
not indicated coverage.

 The sole record evidence bearing on this issue appears in an excerpt from Greene's
deposition contained in the agreed record. Greene explained that he "doubt[ed] . . . very
seriously" that he would have sought any medical care beyond the ambulance trip and the
emergency room physician had Whatley not indicated that "there was coverage somewhere." The
record, however, is bereft of any additional evidence that Greene did seek additional medical care. 
We therefore have no way to determine whether Greene's reliance on Whatley's assurances caused
him any damage or detriment. Consequently, Greene has failed to prove an essential element of
a claim of estoppel. We conclude that the district court properly denied Greene recovery.



CONCLUSION


 For the foregoing reasons, we affirm the judgment of the district court that Greene
take nothing.



 

 Bea Ann Smith, Justice

[Before Justices Powers, Aboussie and B. A. Smith]

Affirmed

Filed: December 9, 1992

[Do Not Publish]