Harold K. DAVIES, Appellant,

v.

**UNAUTHORIZED PRACTICE COMMIT-
TEE OF the STATE BAR OF TEX-
AS et al., Appellees.**

No. 369.

Court of Civil Appeals of Texas.

Tyler.

July 18, 1968.

Rehearing Denied Sept. 19, 1968.

Key, Carr, Carr & Clark, Aubrey J. Fouts, Lubbock, for appellant.

Davis Grant, Austin, Thomas J. Griffith, Lubbock, for appellees.

MOORE, Justice.

This is a suit for a permanent injunction brought by the Unauthorized Practice Committee of the State Bar of Texas and the Lubbock County Bar Association under the provisions of Article 320a–1, Vernon's Ann.Civ.Stat., seeking to permanently enjoin defendant, Harold K. Davies, from engaging in the unauthorized practice of law. Defendant answered with a general denial. Thereafter, plaintiffs filed a motion for summary judgment alleging that under the pleadings, depositions, affidavits and admissions, no material issue of fact remained to be tried and therefore plaintiffs were entitled to a summary judgment as a matter of law. Defendant made no formal reply to the motion.

After a hearing the trial court entered a summary judgment perpetually enjoining defendant from the practice of law generally and specifically enjoining him from:

(1) Soliciting employment for any lawyer or furnishing any attorney or counsel to render legal services for any other person.

(2) Appearing as attorney or counselor or in any representative capacity in any action, proceeding, contest, or dispute in any court or before any judicial body or before any administrative body, commission, tribunal, examiner, or similar official or holding himself out to any person as competent to give legal advice or counsel or engaging in advising or counseling in law or the preparation of legal documents save those to which he may be a primary party.

(3) Organizing corporations, trusts, estate and taxation plans or the giving of opinion relative to the same.

(4) Advising or counseling any other person as to secular law.

(5) Drawing any paper, document, or instrument effecting or relating to secular rights excepting documents to which he is a primary party.

(6) Doing any act in a representative capacity in behalf of another intending to obtain or secure for such other by law the prevention or the redress of a wrong or the enforcement or the establishment of a right.

(7) Enforcing, securing or settling, adjusting or compromising defaulted, controverted, or disputed accounts, claims, or demands between persons excepting matters to which he is a primary party, and excepting such actions as may be lawfully performed by other professional and occupational groups to which defendant may at the time of such action belong.

From such judgment, defendant duly perfected this appeal. The parties will hereinafter be referred to as appellant and appellees.

Appellant asserts by his first and second points that the judgment is erroneous because there is no evidence to support the same, and alternatively says that the evidence, if any, raises nothing more than an issue of fact upon the question of whether or not he was engaged in the practice of law and therefore the granting of a summary judgment was unauthorized. We have concluded that the evidence shows as a matter of law that the appellant was engaged in the practice of law and therefore both points are overruled.

The evidence presented by appellees consists mainly of appellant's deposition and certain correspondence between appellant and one J. A. Hodges in which appellant outlines various services performed by him and demands payment therefor.

It is without dispute that appellant is not qualified or licensed to practice law in the State of Texas or in any other state. Nor is he licensed to practice any other profession. According to his testimony, he spent most of his career in the military service. While stationed in the Philippines, he met one C. N. Hodges, by whom he was subsequently employed. Thereafter, he moved to Lubbock, Texas, and was employed by J. A. Hodges, the brother of C. N. Hodges. After the death of C. N. Hodges, J. A. Hodges employed appellant to go to the Philippines for the purpose of inventorying the C. N. Hodges estate, which consisted of various real estate and business operations in the Philippines. By reason of the death of C. N. Hodges, J. A. Hodges inherited an interest in the estate. In addition to this estate, J. A. Hodges also had an interest in another large estate known as the Linnie Jane Hodges estate and was formerly the administrator thereof. The evidence further shows that J. A. Hodges had various real estate holdings and business enterprises of his own in the Lubbock area. Being an elderly man with many business activities, he engaged the appellant to assist him in various business enterprises and paid him upon a fee basis.

Appellant does not deny that he performed various duties for J. A. Hodges in a representative capacity. He admits that he had prepared and mailed J. A. Hodges a letter in which he billed him for various fees in the amount of $10,142.44 for his services in connection with the numerous transactions he had performed in his behalf. His deposition testimony, together with his letter detailing his services and billing Hodges for the same, shows that:

(1) He prepared numerous building and construction contracts which were subsequently executed by J. A. Hodges and third parties. He also prepared a purchase contract for J. A. Hodges and third parties relating to the Wayfarer Motel in Lubbock, Texas. According to his bill, he was promised a fee of $1,000.00 for the latter contract.

(2) He prepared and submitted to J. A. Hodges a plan for the establishment of an

educational foundation in the Philippine Islands in memory of C. N. Hodges, his deceased brother. According to his bill, his fee for this was to be 12% of the estate of C. N. Hodges.

(3) He prepared and submitted to J. A. Hodges a plan to incorporate his assets. In this connection, he admitted that he submitted to Hodges Articles of Incorporation, which he copied from the Articles of a corporation of his own. His letter shows that he demanded a fee for this service.

(4) He prepared and submitted to J. A. Hodges a plan for the establishment of a trust fund and gave legal advice in connection therewith. He admitted that he got his information from a bank brochure. He submitted a bill for this service.

(5) He admitted that he assisted J. A. Hodges in the negotiation with the County Commissioners with regard to a certain condemnation proceeding in which the county was attempting to condemn land owned by Mr. Hodges for right-of-way purposes. In submitting his bill for this service, he notes that as a result of the negotiations, Mr. Hodges received approximately $13,000.00 additional revenues as a result of his participation.

(6) He admitted that he had filed a formal claim on behalf of J. A. Hodges with the administrator of the estate of Linnie Jane Hodges seeking to collect the sum of $22,950.00 which Mr. Hodges claimed was due him for service performed as administrator of the estate.

(7) He also admitted that by verbal agreement between him and J. A. Hodges, he had employed attorneys to represent Mr. Hodges in the trial of a lawsuit. He submitted a bill for his services for the employment of the attorneys and assisting them in the litigation in the amount of $600.00.

(8) He admitted that he had written a letter on behalf of J. A. Hodges to the attorneys for the administrator of the estate of the Linnie Jane Hodges estate, advising them as to the method of computing the inheritance tax and giving them his opinion as to the application of the law to the facts. In his letter to the attorneys, he cited numerous cases in support of his opinion and made reference to the provisions of the "United States Code Annotated Title 26, Internal Revenue Code 2001–4000, I.R.C. 1954."

Much has been written concerning the unauthorized practice of law. Much has been said concerning the necessity and importance to the public of preventing the practice of law by persons not licensed to engage in the law practice. According to the generally understood definition of the practice of law, it embraces the preparation of pleadings and other papers incident to actions of special proceedings, and the management of such actions and proceedings on behalf of clients before judges in courts. However, the practice of law is not confined to cases conducted in court. In fact, the major portion of the practice of any capable lawyer consists of work done outside of the courts. The practice of law involves not only appearance in court in connection with litigation, but also services rendered out of court, and includes the giving of advice or the rendering of any service requiring the use of legal skill or knowledge, such as preparing a will, contract or other instrument, the legal effect of which under the facts and conclusions involved must be carefully determined. Stewart Abstract Co. v. Judicial Commission (Tex.Civ.App.), 131 S.W.2d 686; Hughes v. Fort Worth Nat. Bank (Tex.Civ.App.), 164 S.W.2d 231; People ex rel. Illinois State Bar Ass'n v. Schafer, 404 Ill. 45, 87 N.E.2d 773. A comprehensive definition of the term "practice of law" will be found in 7 C.J.S. Attorney and Client § 3, page 703, with citations of many cases illustrating fact situations in which the acts in question were held to be or not to be the practice of law. An exhaustive research upon the question will also be found in 125 A.L.R. 1173, 1177. We refer to the exhaustive discussions in

the authorities cited, and shall not undertake to repeat what is said in them.

■ That the above acts committed by the appellant constituted the practice of law is too plain to admit of argument. To us it is clear that appellant agreed to, and actually did, act in a representative capacity in behalf of J. A. Hodges; gave legal advice on taxes, trusts and the formation of a corporation. He prepared legal instruments and placed himself in the position of an advocate in the presentation of claims. Appellant frankly admits that he performed these services on behalf of J. A. Hodges, and therefore the facts showing the practice of law stand uncontroverted. Consequently, we think the order granting the summary judgment enjoining such conduct was therefore proper.

■ Appellant insists, however, that the summary judgment was not justified because of his testimony showing that he did not intend to practice law in the future. He therefore argues that since there was no evidence of threatened or probable continuation of his activities, the granting of the injunction was not warranted. While there is some evidence showing that the last conduct complained of occurred at least a year before the present suit was filed and approximately two years before the taking of appellant's deposition, appellant asserts in his reply to request for admissions that he intends to perform services of the same general type in the future. In other words, he says that he has not been engaged in the practice of law and therefore he intends to continue his present practices. As we view it, he simply says that he intends to continue.

In any event, whether or not he is likely to continue in the unauthorized practice of law is, under the facts presented here, a question of law for the court. Alamo Title Company v. San Antonio Bar Association (Tex.Civ.App.), 360 S.W.2d 814 (ref., n. r. e).

By points 3 and 4 appellant asserts that the summary judgment is erroneous because same is not supported by the pleadings. He also says that the decree is defective because it is too general and does not specify the various practices which appellant is prohibited from doing.

■ We recognize the rule that in order to warrant a court of equity to grant injunctive relief, the petitioner must specify the precise relief sought and the court is without jurisdiction to grant relief beyond and in addition to that particularly specified. Fletcher v. King (Tex.Civ.App.), 75 S.W.2d 980; Lone Star Gas Co. v. Childress (Tex.Civ.App.), 187 S.W.2d 936.

■ We also recognize the rule that an injunction decree must be definite, clear, and as precise as possible; and when practical, it should inform the defendant of the acts he is restrained from doing. Villalobos v. Holguin, 146 Tex. 474, 208 S.W. 2d 871. But, in suits praying for an injunction for the unauthorized practice of law, we do not believe it is necessary for the pleader to set forth all of the possible unauthorized practices which the defendant might conceivably perform. Nor do we believe it to be necessary that the decree specify the numerous acts constituting the practice of law from which the defendant is prohibited from doing. As pointed out before, there is no exact definition of what constitutes the practice of law. It would therefore be impracticable, if not impossible, to write a decree which would embrace all of the practices which might possibly constitute the practice of law. Injunction decrees resulting from this type of action must necessarily be broader than those resulting in other situations. Injunction decrees of this nature are designed to protect the public. Hexter Title & Abstract Co. v. Grievance Committee, Fifth Congressional Dist., State Bar of Texas, 142 Tex. 506, 179 S.W.2d 946, 157 A.L.R. 268. As said in Villalobos v. Holguin, supra, all that would seem to be required is that the de-

cree must be as definite, clear and precise as *possible*, and when *practicable*, it should inform the defendant of the acts he is restrained from doing.

Rule 683, Texas Rules of Civil Procedure, requires only that injunction decree describe in *reasonable* detail that which is prohibited. When the public is involved, the public interest, not the requirement of private litigation, measures the need for injunctive relief. In framing the decree, doubt should be resolved in favor of the public and against the violator. Local 167 of Intern. Broth. of Teamsters, etc. v. United States, 291 U.S. 293, 54 S.Ct. 396, 78 L.Ed. 804; Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754.

We think it would be completely unreasonable to require a decree of this nature to specifically enumerate every possible act which might constitute the practice of law. As we view it, the decree is in substantial compliance with the provisions of Rule 683, supra. Appellant's third and fourth points are overruled.

The judgment of the trial court is affirmed.